**UNITED STATES of America ex rel. John CUNNINGHAM, Petitioner-Appellant,**

v.

**The Hon. Harold W. FOLLETTE, Warden of Green Haven Prison, Stormville, N. Y., Respondent-Appellee.**

**No. 502, Docket 31831.**

United States Court of Appeals
Second Circuit.

Argued May 15, 1968.

Decided July 2, 1968.

Gretchen White Oberman, New York City (Anthony F. Marra, New York City, on the brief), for petitioner-appellant.

Brenda Soloff, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., Michael Colodner, Deputy Asst. Atty. Gen., on the brief), for respondent-appellee.

Before MOORE, HAYS and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Following a plea of guilty, appellant John Cunningham was convicted in 1964 in Supreme Court, New York County, of felonious possession of narcotics; he received a sentence as a second felony offender of five to eight years. Prior to his plea, Cunningham and his co-defendant, Barbara Davis, had unsuccessfully moved to suppress the narcotics taken from them when they were arrested. On the day of sentencing, Cunningham moved to withdraw his plea of guilty, but the motion was denied and sentence was imposed. After appealing in the state courts,[1] Cunningham filed an application for a writ of habeas corpus in the United States District Court for the Southern District of New York. The writ was denied by Thomas F. Murphy, J.,[2] and this appeal followed. For the reasons given below, we affirm.

Cunningham argues that the narcotics seized should have been suppressed because his warrantless arrest was without probable cause. The district court did not rule upon the merits of this claim because the judge thought that Cunningham could not raise it in a federal habeas corpus proceeding, in view of his guilty plea. After Cunningham filed his notice of appeal, we decided that procedural point to the contrary. United States ex rel. Rogers v. Warden of Attica State Prison, 381 F.2d 209 (2d Cir. 1967); United States ex rel. Molloy v. Follette, 391 F.2d 231 (2d Cir.), cert. denied, 391 U.S. 917, 88 S.Ct. 1812, 20 L.Ed. 658 (1968). It would be possible, of course, to remand in view of the intervening rulings. However, relator did clearly raise the issue in the district court, and the relevant state court record is available to us. Moreover, in view of the facts as we view them from our examination of that record, we see no justification for requiring relator to press again for a ruling in the first instance by the district court.[3]

The testimony given on the state motion to suppress indicated the following, taking into account the state court's crediting of the prosecution witness:[4] On October 24, 1963, at approximately 12:50 A.M., a confidential informant told Detective Francis Carillo, who had been with the Narcotics Bureau for three years, that two persons were in Sport's Bar & Grill at 148 Lenox Avenue in Manhattan selling narcotics. The informant identified himself by name, and Carillo recognized his voice. The informant had been reliable on previous occasions; information received from him by Carillo had led to twenty arrests, resulting in twelve convictions, six dismissals, and two cases pending at that time. The informant described the sellers as Negroes, a male named John Cunningham, approximately thirty-five years of age, six feet, 165 pounds, wearing a black, three-quarters length leather jacket and black pants with a brown fedora, and a female, about twenty-five years of age, wearing a tan coat with a fur collar. Carillo, together with two

1. Cunningham appealed to the Appellate Division, which affirmed the conviction without opinion. People v. Cunningham, 25 A.D.2d 819, 269 N.Y.S.2d 945 (1966); leave to appeal to the New York Court of Appeals was denied.

2. United States ex rel. Cunningham v. Follette, No. 66 Civ. 2428 (S.D.N.Y. Oct.

18, 1966). Thereafter, the judge granted relator leave to appeal in forma pauperis and assigned counsel.

3. We note that appellant's able counsel apparently seeks a ruling from us on the merits on this issue.

4. See People v. Cunningham, No. 4376/1963 (N.Y.Sup.Ct. April 27, 1964).

other detectives, immediately proceeded to the bar, which was located approximately eight blocks from the police station. As they entered the bar, Carillo observed a couple sitting at a table, along with some other people, who fitted the informant's description exactly. At the same time, Cunningham looked in Carillo's direction, immediately removed a brown paper bag from his person and placed it in the handbag of his companion, later identified as Barbara Davis. Carillo approached the couple, identified himself, and told them to accompany him to the rear. After ascertaining that the male was named John Cunningham, he searched Miss Davis's handbag, removed a brown paper bag, and found it contained 120 glassine envelopes of heroin.

■ Based upon these facts, the state trial court found that the arrest was made upon probable cause and the subsequent search was therefore valid,[5] conclusions with which we agree. This case is similar to United States v. Soyka, 394 F.2d 443 (2d Cir. 1968) (in banc), except that the facts showing probable cause here are in some respects stronger. In Soyka, a reliable informant had furnished the police with a detailed set of facts about the defendant and his narcotics activities which alone might have furnished probable cause for arrest. See Aguilar v. State of Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). But we did not decide that issue in Soyka, because the balance toward probable cause was clearly tipped by the added fact that when Soyka interrupted the "proper reconnaissance" of the agents, he jumped back from a hallway into his apartment. Two judges out of nine dissented in Soyka, because, *inter alia*, the details given by the informer either did not relate to a current pattern of narcotics activity or were not verified at the time of arrest, the identity of the informer was unknown even to the officers, and, perhaps most important to the dissenters, the arrest was used "to justify the warrantless search of a dwelling." 394 F.2d at 454. In this case, to the contrary, the details were verified, they related to a current sale of narcotics, the name of the informant was known by the police, and the crime was allegedly taking place in a public bar, not a private home.

In addition, as in *Soyka*, Cunningham committed an act which corroborated his guilt when he saw three strangers enter the bar; i. e., he immediately placed the brown paper bag in Miss Davis's handbag. Appellant here, as in *Soyka*, argues that there was nothing intrinsically suspicious about that, and in the abstract that may be true. But just as words acquire special meaning in context, see United States v. Ramsey, 374 F.2d 192 (2d Cir. 1967) (good "treys"); United States v. Llanes, 357 F.2d 119 (2d Cir. 1966) ("stuff"), so do actions or objects. To an experienced narcotics officer, suddenly handing over a brown paper bag in a bar at 1:00 A.M. when strangers enter might contribute in great measure to a reasonable inference. Cf. United States v. Devenere, 332 F.2d 160, 161 (2d Cir. 1964); United States v. Nicholas, 319 F.2d 697 (2d Cir.), cert. denied, 375 U.S. 933, 84 S.Ct. 337, 11 L. Ed.2d 265 (1963); United States ex rel. Robinson v. Fay, 239 F.Supp. 132 (S.D. N.Y.1965), aff'd in open court (2d Cir. July 26, 1965), cert. denied, 382 U.S. 998, 86 S.Ct. 587, 15 L.Ed.2d 485 (1966). We have no doubt that, as in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), the detectives could reasonably act at that moment on the information that the "suspect would commit a crime in a public place where in fact he later appeared." United States v. Soyka, 394 F.2d at 454. See also United States v. Robinson, 354 F.2d 109, 110–112 (2d Cir. 1965) (in banc), cert. denied, 384 U.S. 1024, 86 S. Ct. 1965, 16 L.Ed.2d 1028 (1966).

■ Relator also argues that he was entitled to a hearing on the claim that his plea of guilty was involuntary.

5. Id. at 4.

The principal bases for the assertion of involuntariness are that an assistant district attorney had said that if Cunningham wanted to take Miss Davis "off the hook" he would have to "take a plea," and that Cunningham was under the influence of narcotics at the time of the guilty plea. We have examined the available record of the proceedings in the state court on May 11, 1964, when Cunningham pleaded guilty, and on June 16, 1964, when he attempted to withdraw his plea. Cunningham admitted that the alleged remark of the prosecutor was not made to him; he also disclaimed any promise from the court, but pointed to the "pressure" of the indictment, undeniably present but hardly improper. The transcript shows that the state judge carefully questioned appellant when he took the guilty plea; it also reflects Cunningham's apparent misapprehension, when he attempted to withdraw his plea, that just because he had handed the paper bag to Miss Davis, he did not have possession of the narcotics. It may be that Cunningham was also influenced by a desire to help Miss Davis. But that would not invalidate the plea in a case in which he was represented by competent counsel, the plea was voluntarily made with no inducement by the court or the prosecutor and the state was ready to go ahead at the time of the plea, as was the case here. United States ex rel. Robinson v. Fay, 348 F.2d 705 (2d Cir. 1965), cert. denied, 382 U.S. 997, 86 S.Ct. 583, 15 L. Ed.2d 484 (1966). See also Kent v. United States, 272 F.2d 795 (1st Cir. 1959). We agree with Judge Murphy that no hearing was required on this aspect of the application for the writ.

Finally, the assertion that Cunningham was under the influence of narcotics at the time of the guilty plea has never been raised in the state courts, as Judge Murphy held. Therefore, that claim is not exhausted and was properly dismissed, without prejudice to renewal in the district court, should the state courts deny relief. United States ex rel. Tangredi v. Wallack, 343 F.2d 752 (2d Cir. 1965).

Judgment affirmed.