Commonwealth *v.* Hughes, Appellant.

Submitted April 15, 1971.   Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

Before WEIR, J.

*Byrd R. Brown,* for appellant.

*Carol Mary Los* and *Robert L. Campbell,* Assistant District Attorneys, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., June 22, 1971:

On the morning of June 28, 1968, a police officer of the Pittsburgh narcotics squad obtained a warrant to search the first-floor apartment of Merle Bedford and Mary Hughes, at 226 Dinwiddie Street in Pittsburgh, for narcotics. The affidavit for the warrant recited information received that Bedford and Hughes were packaging and selling narcotics from the apartment; that the informant had provided information in the past which resulted in arrest, and seizure of narcotics;[1] and that addicts were seen entering and leaving the apartment after short stays.

Having this warrant in his possession, affiant and three other police officers, all of whom were on the narcotics squad and had vast experience in narcotics investigations, began a surveillance of the apartment house at 226 Dinwiddie Street. The apartment house was two and one-half to three stories high with apartments on each floor. Appellant occupied two rooms in the rear, on the first floor, from which a door opens

---

[1] One of the seizures mentioned in the affidavit occurred at the apartment of Merle Bedford, which was the same apartment Mary Hughes occupied and the same apartment for which the warrant was issued.

into a common hallway. This common hallway is entered from the outside by a door on the front porch which gives access to the whole building.

At approximately 11 :30 p.m. on June 28, the officers, still undertaking their surveillance, observed a woman known by them to be a drug addict, enter the front entrance to the apartment building. The officers followed the woman and observed the appellant meet the woman at the entrance and open the door for her. The woman then appeared to hand something to appellant. When the first officer was several feet away from the woman, appellant saw him and ran through the hallway to the rear of the hall. The officer went through the open door and followed her. Appellant ran up a flight of stairs and entered a lighted bathroom on the second floor. The officer was in close pursuit behind her.

The bathroom was a communal one used by the tenants of all the apartments located in the building. When appellant entered the bathroom she threw a change purse, which was in her left hand, under a bathtub. The officer who was just entering the room observed this action. He then grabbed appellant by both arms to restrain her and directed a second officer, who had just entered the room, to retrieve the change purse. The purse was easily located under the tub and was found to contain six glassine bags of white powder and six capsules. An additional capsule was found at appellant's feet and a $10 bill was seen in her right hand. Upon analysis, the six glassine bags were found to contain heroin and the seven capsules were found to contain cocaine.

Appellant was indicted for possession of narcotic drugs, a felony. Prior to trial, she filed a motion to suppress the evidence which was seized. This motion was denied and she was later found guilty in a jury trial. In this appeal, she contends that there was no

probable cause for either the arrest or the search and, therefore, the evidence of the heroin and cocaine should have been suppressed.[2] We feel that the police had probable cause to arrest, and the search being incident to a valid arrest was proper. We, therefore, affirm the judgment of the court below.

To be lawful, an arrest without warrant must be based on probable cause. *Commonwealth v. Negri,* 414 Pa. 21, 198 A.2d 595 (1964), *rehearing,* 419 Pa. 117, 213 A.2d 670 (1965). "An arrest may be accomplished by 'any act that indicates an intention to take [a person] into custody and that subjects him to the actual control and will of the person making the arrest.'" *Commonwealth v. Bosurgi,* 411 Pa. 56, 68, 190 A.2d 304, 311 (1963); *Commonwealth v. Vassiljev,* 218 Pa. Superior Ct. 215, 275 A.2d 852 (1971). In this case the arrest was accomplished when the police officer grabbed appellant in the bathroom, thereby restraining her. It was at this point that she was subjected to the control of the police and that act showed an intention to take her into custody. Thus, it is the events preceding this moment that must be examined to see whether probable cause for this warrantless arrest existed. ". . . '[p]robable cause . . . exists "where 'the facts and circumstances within their [officer's] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." . . .'" *Commonwealth v. Negri,* 414 Pa. at 31, 198 A.2d at 600.

_____

[2] In her brief to this Court, appellant also contends that the trial judge erred in permitting police to testify that the woman who knocked on appellant's door was "a known narcotics addict." The use of this phrase was not objected to at the suppression hearing, and was not raised in post-trial motions. Thus, it cannot now be considered.

The search warrant in this case was not valid. The validity of a search warrant obtained by use of an informer's tip must be measured by the two-prong test set forth in *Aguilar v. Texas,* 378 U.S. 108, 114, 115 (1964) : "[T]he magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed . . . was 'credible' or his information 'reliable'." Here the affidavit satisfies one part of the test in that the affidavit recites reasons for concluding the informant was reliable, *i.e.,* the recitation of three prior successful arrests and seizures based on the informant's information. The affidavit fails, however, to indicate any underlying circumstances that led informant to conclude that appellant was packaging and selling heroin and cocaine in the apartment. Thus, the search warrant possessed by the officers was invalid for lack of probable cause.

The fact that the informer's hearsay allegations do not furnish probable cause for the issuance of the warrant, however, does not mean that the allegations cannot be taken into consideration when determining whether there was probable cause for an arrest on view. Acts which the police themselves observe may be used to confirm what the police have been told. *United States v. Soyka,* 394 F.2d 443 (2d Cir. 1968), *cert. denied,* 393 U.S. 1095 (1969) ; *cf. United States ex rel. Cunningham v. Follette,* 397 F.2d 143 (2d Cir. 1968), *cert. denied,* 393 U.S. 1058 (1969).

In *Soyka,* federal agents received information from a previously reliable informant which they felt established probable cause for the issuance of a warrant. Preparatory to obtaining the warrant, they went to the location of Soyka's apartment to verify the location. While one of the agents was in the hallway out-

side the apartment, Soyka walked out of his apartment and saw the agent who was not in uniform. Soyka got a startled, alarmed expression on his face and jumped back into the apartment. The agent then grabbed and arrested him. The agents proceeded to search the apartment. The Second Circuit Court of Appeals, assuming that the information given by the informant would not establish probable cause for a search warrant because the informer did not give sufficient underlying facts, still held the arrest and subsequent search valid. Speaking for seven members of a nine-judge *en banc* panel, Judge FRIENDLY stated: "We are not, however, required to decide whether a magistrate or commissioner, told of all the Government here knew about Soyka, could not rationally have found this to be enough to justify the issuance of a warrant. A new set of facts was thrown on the scales when the agents' proper reconnaissance was interrupted by the appearance of Soyka who, seeing Agent Waters in the hall near his apartment, 'jumped back toward the inner recesses of the apartment' . . . his conduct afforded impressive confirmation of what the agents had been told. . . . Finding that Soyka's physical appearance tallied precisely with the informant's description and that he acted as a narcotics seller normally would upon encountering law enforcement officers, Agent Waters had reason to conclude from this 'cumulation of instances' that the information about Soyka was right. . . . Reading the Fourth Amendment as requiring a law enforcement officer, armed with the reasons for belief in guilt that Agent Waters possessed, to allow a suspect to retire and destroy the evidence of his crime, would ignore that only 'unreasonable' searches and seizures are banned. . . ." *Id.* at 453-54.

Thus, if sufficient other facts observed by police officers substantiate the information received from the informant, probable cause exists for an arrest on

view. Before the officers began their surveillance in the instant case, they knew, from facts given by the informant, that (1) appellant was said to be selling and packaging narcotics from her apartment, (2) she lived in a first-floor apartment, and (3) a large supply of narcotics was previously found in the apartment in which appellant lived with Merle Bedford. After the surveillance began, the following occurred: (1) a known narcotics user met appellant at the front door of the apartment building and handed her something,[3] (2) at the sight of the police, appellant turned and ran, (3) appellant did not run to her first-floor apartment which could be locked, but started upstairs,[4] (4) appellant entered a bathroom which could not be locked, but which is a convenient location for disposing of nar-

---

[3] In *Sibron v. New York*, 392 U.S. 40 (1968), the Court held that merely talking to addicts did not establish probable cause, emphasizing that the officers saw nothing pass between Sibron and the addicts. Here, the officers did see something pass between the known user and appellant.

[4] Appellant contends that the common hallways and stairs of the apartment were constitutionally protected areas which the police had no right to enter. Based on this contention, she argues that facts (3), (4), and (5) should not be considered in determining whether there is probable cause since the police would have no knowledge of them if the constitutionally protected area had not been invaded. This argument has no merit. As stated in *People v. Seals*, 263 Cal. App. 2d 575, 69 Cal. Rptr. 861 (1968): "It appears to be settled that police officers in performance of their duty may, without doing violence to the Constitution, enter upon the common hallway of an apartment building without warrant or express permission to do so." See, *e.g.*, *Polk v. United States*, 314 F.2d 837 (9th Cir. 1963), *cert. denied*, 375 U.S. 844 (1963) ; *People v. Terry*, 70 Cal. 2d 410, 454 P.2d 36, 77 Cal. Rptr. 460 (1969), *cert. denied*, 399 U.S. 911 (1970) ; *State v. Smith*, 37 N.J. 481, 181 A.2d 761 (1962), *cert. denied*, 374 U.S. 835 (1963). Furthermore, even if the entry is technically a trespass, a simple trespass does not invalidate a search and seizure. The Fourth Amendment protects against unreasonable searches and seizures, not trespasses. *People v. Terry*, supra, and cases therein cited.

cotics, (5) appellant threw some article under a tub. This 'cumulation of circumstances' is more than enough to convince experienced police officers that the information they had received about appellant was correct. It cannot be doubted that, as in *Soyka,* the appellant acted as a narcotic seller would upon seeing the police. "Just as words acquire a special meaning in context ... so do actions." *United States ex rel. Cunningham v. Follette,*[5] supra. Certainly all of the circumstances within the officers' knowledge would warrant a reasonable man in believing an offense was being committed. Thus, probable cause existed for a warrantless arrest.

A search and seizure is proper under the Fourth Amendment standards if it is made pursuant to a lawful arrest. *Commonwealth v. Negri,* supra. *Chimel v. California,* 395 U.S. 752 (1969), of course, changed prior law by limiting the scope of a search incident to arrest to the arrestee's person and the area "within his immediate control." Even assuming appellant could object to a search of a communal bathroom, we need not reach the issue of whether the purse was within appellant's immediate control. The search in this case occurred before the decision in *Chimel,* and *Chimel* has been held to be prospective only. *Hill v. California,* 400 U.S. 810 (1971). Since the heroin and cocaine were seized pursuant to a proper search incident to a valid arrest, the lower court properly denied the motion to suppress.

Judgment affirmed.

HOFFMAN and SPAULDING, JJ., concur in the result.

---

[5] In *Cunningham,* the Court held that to any experienced narcotics officer the act of defendant in handing a brown paper bag to a lady companion in a bar at 1:00 a.m. when strangers enter, might contribute in a great measure to a reasonable inference.