## Commonwealth *v.* Massie, Appellant.

Submitted April 11, 1972. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ.

454

*David O'Hanesian,* with him *Forsyth, Fowkes & O'Hanesian,* for appellant.

*Carol Mary Los* and *J. Kent Culley,* Assistant District Attorneys, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., June 15, 1972:

Defendant, Donald Massie, was charged and convicted of possession and control of narcotic drugs in violation of The Drug, Device and Cosmetic Act (Act of September 26, 1961, P. L. 1664, §4, as amended, January 12, 1970, P. L. (1969) 454, §1). He filed a motion in arrest of judgment on the ground that his arrest without warrant lacked probable cause. The lower court refused the motion and thus this appeal.

In considering this motion in arrest of judgment we consider the evidence in the trial most favorable to the Commonwealth: *Commonwealth v. Zeringo,* 214 Pa. Superior Ct. 300 (1969); *Commonwealth v. Green,* 210 Pa. Superior Ct. 482 (1967).

Officer James Moore of the Pittsburgh Police Department received a phone call from an informant that defendant was in the vicinity of the 1600 block of Centre Avenue in Pittsburgh and that he was dealing in narcotics. Acting upon this information Officer Moore and his partner proceeded without warrant to the 1600

block of Centre Avenue where they saw defendant, carrying a newspaper under his arm, coming out of a tavern. The officers approached defendant and noticed "that he was acting real nervous" and called out his name. Defendant stopped and asked, "What do you want?", and the officers replied, "We want to check you out for drugs". A scuffle between the officers and defendant then occurred. When asked to explain what he meant by a scuffle, Officer Moore testified at trial: "In other words, like you normally grab a man or touch a man, it wasn't that way, when we grabbed him he tried to wiggle away. That's when the newspaper dropped". During the scuffle Officer Moore's partner held defendant against the wall of a building and at that time the newspaper defendant was holding under his arm fell to the sidewalk. Underneath it Officer Moore found what was later ascertained to be one capsule of heroin and five capsules of cocaine. There was no evidence that the capsules were on the sidewalk before the scuffle began.

This is one of those unfortunate cases where police officers apprehend the culprit without the presence of that magical ingredient which the courts, though persevering to define, find undefinable and refer to generally as "probable cause". "Probable cause" is found to exist, it was held in *Draper v. United States,* 358 U.S. 307 (1959), at page 313, "where 'the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that 'an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162 (1925).'"

A study of the officer's testimony as to the informant's statements requires the conclusion that the officers, though armed with sufficient information to alert

them into an investigation of a possible violation of the law by defendant, were not armed with sufficient information to constitute probable cause for defendant's arrest. The informant merely stated that defendant was "dealing in narcotics". No facts to support this conclusion were given. What was held in *Aguilar v. Texas,* 378 U.S. 108 (1964), is pertinent here as well. In that case the United States Supreme Court held that the affidavit did not support the issuance of a warrant because the alleged statement of the unidentified informant was a "mere conclusion" that defendant possessed narcotics; that it contained no affirmative allegation that either the officer affiant or the informant spoke with personal knowledge concerning the commission of the crime. The *Aguilar* court further stated that "for all that appears, the source here merely suspected, believed or concluded that there were narcotics in petitioner's possession". In the instant case the informant was merely expressing an opinion and didn't say that he had first-hand knowledge of an occurring crime.

Once the officers in this case had arrived at the scene of the alleged crime they missed the opportunity to investigate and secure for themselves the information not supplied by the informant. An officer has the right to stop a person on the street for brief questioning if that person is reasonably suspected of having committed a felony: *Commonwealth v. Howell,* 213 Pa. Superior Ct. 33 (1968); *Commonwealth v. Browne,* 221 Pa. Superior Ct. 368 (1972). If the officers in this case had so proceeded to ask questions of defendant, they may have secured information sufficient to support probable cause for his arrest. The nature of defendant's answers to the questions, such as the contradictions found in the *Howell* case, supra, or in the *Browne* case, supra, might have supplied legal basis for

the arrest. Instead of engaging the defendant in such questioning, the officers immediately proceeded to tell defendant "we want to check you out for drugs", after which a scuffle ensued which in our opinion amounted to an arrest. It was during the course of this arrest, being effectuated by holding defendant against the wall of the building, that the newspaper defendant was carrying fell to the ground and the capsules were discovered. The discovery and recovery of the capsules resulted from and were tainted by the illegal arrest without probable cause: *Commonwealth v. Santiago,* 220 Pa. Superior Ct. 111 (1971).

Not only was the information supplied insufficient to constitute probable cause for the defendant's arrest, but the Commonwealth's evidence failed to reveal any evidence in support of the arresting officer's conclusion that the informant was reliable. In *Spinelli v. United States,* 393 U.S. 410, the Supreme Court of the United States found inadequate to furnish probable cause an FBI agent's mere allegation that a "confidential reliable informer" had supplied information that a wagering suspect was conducting gambling operations by means of two specified telephone numbers even though the information was partially corroborated by other allegations in the affidavit based on independent FBI investigation.

The application of governing law to the record in this case requires a reversal of the lower court's judgment refusing defendant's motion in arrest of judgment. Judgment reversed.

WRIGHT, P. J. and WATKINS, J., would affirm the judgment below.