Commonwealth, Appellant, *v.* Smith

Argued September 17, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent).

*Michael E. Riskin,* Assistant District Attorney, with him *Charles H. Spaziani,* District Attorney, for Commonwealth, appellant.

*Joseph M. Reibman,* with him *Reibman and Reibman,* for appellee.

OPINION BY JACOBS, J., November 16, 1973:

The Commonwealth appeals from the lower court's suppression of evidence. We find that the Common-

510

wealth has not met its burden of establishing the admissibility of this evidence, and thus affirm.

A review of the record discloses the following facts: At approximately 1:10 p.m. on April 28, 1972, a trooper of the Pennsylvania State Police noticed while on patrol that a motorcycle coming in the opposite direction did not appear to have a proper Pennsylvania inspection sticker. The motorcycle was operated by appellee, Leslie Hale Smith. The trooper turned his vehicle around and followed the motorcycle to the parking lot of a nearby grocery store.[1] Once in the parking lot, the trooper observed that the motorcycle had the proper inspection sticker, which was red; the fender to which the sticker was affixed was also red. This was apparently why the motorcycle appeared not to have an inspection sticker. Even though he realized that the motorcycle possessed the proper sticker, the trooper approached the appellee and requested to see his operator's license and registration card. Upon calling in the appellee's operator's number to the State Police barracks, the trooper was informed that there was a warrant for appellee's arrest. Subsequently, the appellee was instructed to follow the trooper back to the barracks. Before entering the barracks, the appellee was asked whether he had any weapons. When he replied in the affirmative, the trooper reached in and removed a gun from the appellee's coat pocket. Inside the barracks, the appellee was permitted to make a phone call. He called a friend and asked him to come to the barracks to pick up his coat which had been removed. This conversation was overheard and another trooper then searched the coat, out of the appellee's sight, and found a substance he believed to be marijuana.

---

[1] It appears from the record that the trooper never had to motion over the appellee, but that the appellee stopped his motorcycle in the parking lot of his own accord.

The appellee's motion to suppress this evidence, the gun and the alleged marijuana, which had been obtained as a result of the search and seizure was granted.

We agree with the lower court that the appellee had been subjected to a search and seizure when he was accosted, restrained of his freedom, and asked to produce his operator's license and registration card which he then handed over to the officer. *See Terry v. Ohio,* 392 U.S. 1 (1968). The Fourth Amendment of the Constitution of the United States specifically protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." When a person puts "something in his filing cabinet, in his desk drawer, or in his pocket, he has the right to know it will be secure from an unreasonable search or an unreasonable seizure." *Hoffa v. United States,* 385 U.S. 293, 301 (1966). The issue then is whether the search and seizure was reasonable under the circumstances. *See Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276 (1969).

"Searches and seizures made without a proper warrant, or which are not incident to a valid arrest, are generally regarded as unreasonable and violative of the Fourth Amendment." *Commonwealth v. Dorsey,* 212 Pa. Superior Ct. 339, 343, 243 A.2d 176, 177 (1968). There was no warrant here and, when the trooper asked appellee for his operator's license and registration card, there was no search and seizure incident to a lawful arrest. To be lawful, an arrest without warrant must be based on probable cause. *Commonwealth v. Hughes,* 219 Pa. Superior Ct. 181, 280 A.2d 556 (1971) ; *Commonwealth v. Vassiljev,* 218 Pa. Superior Ct. 215, 275 A.2d 852 (1971). At the suppression hearing, the trooper admitted that the appellee had not committed any

crime and was not being arrested or cited for any traffic violation.[2]

However, there are still situations which permit a limited invasion of an individual's privacy even though a police officer does not have probable cause for an arrest. In *Terry v. Ohio,* supra, the United States Supreme Court held that a police officer may seize an individual and make a limited search of his outer clothing for weapons when the officer observes that the individual is acting suspiciously which leads him reasonably to believe that criminal activity may be afoot and that the individual may be armed and dangerous. In the present case, these circumstances clearly did not exist. No testimony was elicited to show that the appellee was acting suspiciously or that the trooper believed that criminal activity was afoot.

It has also been held that there is nothing unconstitutional about the brief detention of an individual, under circumstances not justifying arrest, for the purpose of investigating possible criminal activity. *Adams v. Williams,* 407 U.S. 143 (1972) ; *Terry v. Ohio,* supra; *Harvey Appeal,* 222 Pa. Superior Ct. 222, 295 A.2d 93 (1972) ; *Commonwealth v. Howell,* 213 Pa. Superior Ct. 33, 245 A.2d 680, *allocatur refused,* 213 Pa. Superior Ct. xxxix (1968). At the suppression hearing, the trooper testified on cross-examination that he had stopped the appellee a month earlier at which time the appellee did not have the proper license to operate a motorcycle; this could possibly justify a request for the license. Unfortunately for the Commonwealth, the trooper also testified that he did not recognize the appellee at the time that he drove by on his motorcycle,

---

[2] The Act of April 29, 1959, P. L. 58, §1221(a), *as amended,* 75 P.S. §1221(a), requires the operator of a vehicle *charged with a violation* to stop upon the request of a uniformed peace officer and exhibit his operator's license and registration card.

and there is no testimony to indicate that the trooper recognized the appellee before he asked him for his operator's license and registration card. Thus, it has not been established that the trooper knew of facts which would justify him in continuing his investigation on the basis of a possible violation of The Vehicle Code.[3] Under Pa. R. Crim. P. 323 the burden of "establishing the admissibility of the challenged evidence" was on the Commonwealth and we are satisfied that it did not meet its burden, which was to establish admissibility by the preponderance of the evidence. *Commonwealth v. Ravenell*, 448 Pa. 162, 292 A.2d 365 (1972).

We hold that the evidence which was later obtained was the "fruit" of the illegal search and seizure of the appellee. *Wong Sun v. United States*, 371 U.S. 471 (1963). It was, thus, proper to suppress such evidence. The Commonwealth has not established any "attenuation" between the initial illegal search and seizure and the subsequent searches and seizures to free them of the primary taint. *See Commonwealth v. Meadows*, 222 Pa. Superior Ct. 202, 293 A.2d 365 (1972).[4]

For the above reasons, we affirm the order of the court below suppressing the evidence.

WRIGHT, P. J., dissents.

---

[3] Act of April 29, 1959, P. L. 58, *as amended*, 75 P.S. §§101 *et seq.*

[4] In light of our disposition of this case, it is unnecessary to discuss the other issues raised in the Commonwealth's brief.