Commonwealth, Appellant, *v.* Brown.

Argued April 8, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Robert L. Campbell,* Assistant District Attorney, with him *Robert L. Eberhardt,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellant.

*John H. Corbett, Jr.,* Trial Defender, with him *John J. Dean,* Chief, Appellate Division, and *George H. Ross,* Public Defender, for appellee.

OPINION BY JACOBS, J., June 21, 1974:

This is an appeal by the Commonwealth from the suppression of evidence by the lower court. We reverse.

At the suppression hearing, the arresting officer, the only witness called, related to the court the following facts: At approximately 9:00 p.m., on June 28, 1972, the witness and three other detectives were conducting a narcotics surveillance of a certain area of Pittsburgh. At that time, they received information from an informant, who had proved reliable in the past, that the defendant, Earl Brown, had just left the Vets Club and that the informant had observed defendant selling red capsules which he stated were narcotics. Upon receipt of this information, the police proceeded to the Vets Club where they observed the defendant and four other men enter a Cadillac. The police were unable to apprehend the defendant at that time, but followed the Cadillac. Soon thereafter, they stopped the Cadillac, and after the witness identified himself, he observed the defendant open the door on the passenger's side and drop to the ground two silver-foil packets containing white powder. These items were retrieved by the witness who then immediately arrested the defendant and informed him of his constitutional rights. A body search of the defendant uncovered assorted narcotics paraphernalia and four capsules of white powder. Appellant was charged with possession with intent to deliver heroin, which is denoted a felony by The Controlled Substance, Drug, Device and Cosmetic Act of April 14, 1972, P. L. 233, No. 64, §§1 *et seq.*, 35 P.S. §§780-101 *et seq.* (Supp. 1974-75).

The basic issue is whether the police, under the circumstances presented by this case, were justified in stopping the Cadillac and arresting the defendant who was riding as a passenger therein. If such a stop was illegal, the evidence obtained, being the fruit thereof, must be suppressed. *See Wong Sun v. United States,* 371 U.S. 471 (1963); *Commonwealth v. Smith,* 225 Pa. Superior Ct. 509, 311 A.2d 716 (1973).

The arrest, here, was without a warrant and to be lawful must be based on probable cause. *Commonwealth v. Hughes,* 219 Pa. Superior Ct. 181, 280 A.2d 556 (1971); *Commonwealth v. Vassiljev,* 218 Pa. Superior Ct. 215, 275 A.2d 852 (1971). The analysis of probable cause for an arrest without a warrant "is basically similar to that demanded of a magistrate when he considers whether a search warrant should issue." *Spinelli v. United States,* 393 U.S. 410, 417 n.5 (1969). Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed. *Betrand Appeal,* 451 Pa. 381, 303 A.2d 486 (1973); *Commonwealth v. Greco,* 227 Pa. Superior Ct. 19, 323 A.2d 132 (1974). Hearsay information alone may be sufficient to establish probable cause. *Betrand Appeal,* supra. "However, when, as here, probable cause for a warrantless arrest is based on such hearsay information supplied by an anonymous informer, the arresting officer must have two types of additional information before probable cause is established. First, in order to assure that the tip is not merely an unsupported rumor, the officer must know the underlying circumstances from which the informer concluded that the suspect participated in the [crime]. Second, in order to reduce the possibility that a tip meeting the first standard is merely a well-constructed fabrication, the officer must have some reasonable basis for concluding that the source of the tip was reliable." *Id.* at 385-86, 303 A.2d at 488 (footnote omitted).

In the instant case, the information received by the arresting officer warranted him in believing that the defendant was in the possession of and selling illegal drugs. However, we must examine the source of this information to determine whether the arresting officer

was justified in relying on the tip. The first question we must ask is whether the tip set forth sufficient facts to support the informant's conclusion. Returning to the record, we find that the arresting officer was told that "the defendant, Earl Brown, had just left the Vets Club located on Frankstown Avenue and that he, the informant, had observed Mr. Brown, in fact, selling red capsules which he . . . stated were, in fact, narcotics." This information was not merely a conclusion that the defendant possessed narcotics, *see Aguilar v. Texas,* 378 U.S. 108 (1964), nor was it based on outside knowledge. *See Commonwealth v. Smith,* 453 Pa. 326, 309 A.2d 413 (1973) (where the informant "found out" that the defendants had narcotics in their possession). It was based on personal observation and, thus, satisfied the first requirement. As to the second requirement, the arresting officer testified at the suppression hearing that "we received certain information from a reliable informant, who proved reliable in the past . . . ." These facts present little more than a mere conclusion on the part of the arresting officer that the informant was reliable. As such, they were insufficient to provide a reasonable basis for concluding that the source of the tip was reliable. *See Commonwealth v. Massie,* 221 Pa. Superior Ct. 453, 292 A.2d 508 (1972). Because the reliability of the informant has not been satisfactorily established, we hold that probable cause was not initially present when the police stopped the Cadillac in which the defendant was riding as a passenger.

However, for other reasons, we find that the police were justified in pursuing and stopping the Cadillac, and eventually arresting the defendant. In *Commonwealth v. Smith,* 225 Pa. Superior Ct. at 512, 311 A.2d at 718, we noted that "there is nothing unconstitutional about the brief detention of an individual, under circumstances not justifying arrest, for the purpose of in-

vestigating possible criminal activity." That statement was based in part on *Adams v. Williams,* 407 U.S. 143, 145-46 (1972), where the United States Supreme Court observed: "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry [*Terry v. Ohio,* 392 U.S. 1 (1968)] recognizes that it may be the essence of good police work to adopt an intermediate response. . . . A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time."

Although the Pennsylvania Supreme Court has invalidated police stops of motor vehicles where the stop was merely routine, *Commonwealth v. Swanger,* 453 Pa. 107, 307 A.2d 875 (1973), or based on an "unusual look" by the driver, *Commonwealth v. Boyer,* 455 Pa. 283, 314 A.2d 317 (1974), the facts in the present case are clearly distinguishable. Here, the arresting officer had received a tip from a known informant who had supplied information in the past. The tip related that the defendant was observed selling narcotics at the Vets Club. When the police arrived at the Vets Club, the tip was partially verified because the defendant was in fact just leaving the club and getting into a Cadillac. Armed with the informant's tip and his own personal observation, the arresting officer was justified in believing that criminal activity was afoot. Under these circumstances, he acted in a reasonable manner by stopping the Cadillac for investigation. In *United States v. Hernandez,* 486 F.2d 614 (7th Cir. 1973), the arresting officer received a radio bulletin which reported that a certain van was illegally transporting aliens. The source of this information was not disclosed. While

the Court in *Hernandez* found probable cause for arrest to be absent, it held that "sufficient criminal behavior was outlined in the radio dispatch to justify this investigative stop [of the van]. Once the van was stopped, its illegal contents were in plain view and there was probable cause for the subsequent arrest and search." *Id.* at 617.

Here, the record revealed that upon his approach to the stopped vehicle, the arresting officer observed the defendant drop two silver tin-foil packets to the ground. After finding these packets to contain a white powder, the officer placed the defendant under arrest. While probable cause was not present prior to the stop of the vehicle, the subsequent events, in plain view of the officer, established probable cause for the defendant's arrest.

For the above reasons, the order of the court below suppressing the evidence is reversed.

VAN DER VOORT, J., concurs in the result.