Commonwealth *v.* Cruse, Appellant.

Submitted December 6, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*George E. Goldstein,* and *Goldstein and Rosenblum,* for appellant.

*Neil Kitrosser, Mark Sendrow,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., September 22, 1975:

This is a direct appeal from appellant's conviction, in a non-jury trial, of unlawfully carrying a firearm without a license.

The facts which gave rise to appellant's arrest can be briefly stated as follows. On January 27, 1972, at approximately 10:30 P.M. Sgt. Bayer, of the Philadelphia Police Department, received a radio call directing him to proceed to 35th and Powelton Avenue where he would find

a white Dodge bearing license number 39210Z which would be occupied by two Negro males and a Puerto Rican female. The radio message indicated that the occupants of the car were armed and were in the area to purchase a large quantity of narcotics. Sgt. Bayer requested that another car and a wagon meet him approximately 50 yards from the location of the white Dodge. The police vehicles met and four officers then approached the white Dodge with their weapons drawn. Upon arriving at the car the officers ordered the occupants out. The appellant, who was sitting in the right front seat, reached down between his legs toward the floor and was then pulled from the car. Upon searching the car, the police officers found a revolver underneath the front seat, where appellant had been sitting.

Appellant contends that the arrest and subsequent search of the vehicle was improper in that it was based upon an unsupported allegation of illegal conduct made by an anonymous informer. Implicit in appellant's contention are two facts which are questioned by the Commonwealth. First, the Commonwealth refers to the incident as a protective search which resulted in an arrest rather than an arrest and subsequent search. Although this appears to be primarily a question of semantics it is important in that if the incident is viewed as an arrest and subsequent search the standards used to determine whether the officers' actions were proper would be the standards governing warrantless arrests, while if the incident is viewed as a protective search and arrest the standards used would be those governing stop-and-frisk cases.

Second, the Commonwealth disputes appellant's contention that the officers' action was based upon an unsupported allegation made by an anonymous informer. The Commonwealth contends that the radio message was a sufficient basis for the officers' conduct. While this might in some cases be true, it assumes that the radio message

itself had a proper basis. The United States Supreme Court addressing this problem in *Whiteley v. Warden*, 401 U.S. 560, 568 (1971) stated: "We do not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin. . . . Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest." See also *Commonwealth v. Kenney*, 449 Pa. 562, 566-567 (1972).

In the instant case the Commonwealth neither at trial nor at pre-trial hearings made an effort to establish the basis of the radio call. However, from the testimony of Sgt. Bayer at the suppression hearing, it is apparent that the information on which the radio call was based was obtained from a tip from an anonymous informer.

We are now faced with the problem of whether the search was proper under warrantless arrest or stop-and-frisk standards. The Pennsylvania Supreme Court has thoroughly analyzed the problem of warrantless arrests based on information received from anonymous informers, and has put forth the following standard in the case of *Betrand Appeal*, 451 Pa. 381, 385-386 (1973): "However, when, as here, probable cause for a warrantless arrest is based on such hearsay information supplied by an anonymous informer, the arresting officer must have two types of additional information before probable cause is established. First, in order to assure that the tip is not merely an unsupported rumor, the officer must know the underlying circumstances from which the informer concluded that the suspect participated in the robbery. Second, in order to reduce the possibility that a tip meeting the first standard is merely a well-constructed fabrication, the officer must have some reasonable basis for concluding that the source of the tip was reliable. *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509 (1964); *Common-*

wealth v. *Garvin*, 448 Pa. 258, 293 A.2d 33 (1972); cf. *Commonwealth v. Mamon*, 449 Pa. 249, 297 A.2d 471 (1972)." See also *Commonwealth v. Lassiter*, 457 Pa. 582 (1974); *Commonwealth v. Brown*, 228 Pa. Superior Ct. 158 (1974).

In the instant case the officers neither knew the underlying circumstances from which the anonymous informer concluded the appellant was armed and about to make a large narcotics purchase, nor did the officers have a reasonable basis for concluding that the source of the tip was reliable. Accordingly, it is clear that in the instant case probable cause for the warrantless arrest could not be based on information from an anonymous informer; and, in turn, the evidence obtained from a subsequent search could not be offered into evidence. *Wong Sun v. United States*, 371 U.S. 471 (1963).

Having determined that the necessary probable cause did not exist for a warrantless arrest, we must now determine if the officers' conduct was justifiable under stop-and-frisk standards. The United States Supreme Court addressed this problem in the cases of *Terry v. Ohio*, 392 U.S. 1 (1968), *Sibron v. New York*, 392 U.S. 40 (1968); and, *Peters v. New York*, 392 U.S. 40 (1968). In light of these cases the Pennsylvania Supreme Court, in the case of *Commonwealth v. Hicks*, 434 Pa. 153 (1969), held that, first, seizure and search is proper if the police officer has probable cause to arrest, and as was pointed out above no such probable cause exists in the instant case; and second, even if probable cause to arrest is absent, the officer may seize and search for protective reasons *"if the officer* observes unusual and suspicious conduct on the part of the individual seized which leads him reasonably to conclude that criminal activity may be afoot and that the person with whom he is dealing may be armed and dangerous." 434 Pa. at 158-159 (Emphasis supplied.) In applying this test to the instant case it is clear that the officers could not have concluded that crim-

inal activity was afoot or that the appellant was armed and dangerous on the basis of their own personal observations. However, this is not to say that a stop-and-frisk can only be based on an officer's personal observations. In the case of *Adams v. Williams*, 407 U.S. 143 (1972), the United States Supreme Court held that a search based on information received from an informant was proper. In *Adams*, supra, an officer received a tip that an individual seated in a nearby vehicle was carrying narcotics and had a gun in his waist. On the basis of this information the officer approached the vehicle and, when the individual rolled down his window, the officer reached into the car and removed a revolver from the waistband of the individual. This case is factually identical to the instant case except in one critical respect, i.e., in *Adams*, supra, the informant was known to the officer personally and had provided him with information in the past, while in the instant case the informant was an anonymous informer. The court in *Adams*, supra, addressed this distinction at 407 U.S. 146-147:

> "The informant was known to him personally and had provided him with information in the past. This is a stronger case than obtains in the case of an anonymous telephone tip. The informant here came forward personally to give information that was immediately verifiable at the scene. . . . Thus, while the Court's decisions indicate that this informant's unverified tip may have been insufficient for a narcotics arrest or search warrant, see, *e.g.*, *Spinelli v. United States*, 393 U.S. 410 (1969); *Aguilar v. Texas*, 378 U.S. 108 (1964), the information carried enough indicia of reliability to justify the officer's forcible stop of Williams. . . . Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation. Some tips, completely lacking in indicia of reliability, would either

warrant no police response or require further investigation before a forcible stop of a suspect would be authorized."

The information received by the officer in the instant case, an anonymous tip, was completely lacking any indicia of reliability and required further investigation and corroboration before the action taken by the officers would have been justifiable. The only corroborative evidence available to the police prior to making the search and arrest was the description of the car and its passengers, information available to any passerby or resident on the street. The observations of the police, therefore, did not demonstrate that the anonymous informant had any special familiarity with the affairs of the people inside the car, which would increase the likelihood that his tip was not a fabrication. Compare *Draper v. United States,* 358 U.S. 307 (1959). Because the search was improper under both warrantless arrest standards and stop-and-frisk standards, we need not characterize the search as either and must conclude that it was improper and that appellant's motion to suppress was improperly denied.

Accordingly the judgment of sentence of the lower court is reversed.

DISSENTING OPINION BY JACOBS, J.:

I respectfully dissent.

I continue to adhere to the premise that effective law enforcement requires that police be permitted to make brief investigatory stops based upon less than probable cause; and that our respect for the rights of individuals will not be tarnished by permitting such action. In this case police officers were in possession of information which clearly did not amount to probable cause sufficient to justify an arrest. The information was, however, sufficiently detailed to give rise to a suspicion on the part of the officers that criminal activity might be occurring or impending. Harboring such suspicions, the police officers

were justified in approaching the vehicle to investigate. *See Commonwealth v. Brown,* 228 Pa. Superior Ct. 158, 323 A.2d 104 (1974); *Commonwealth v. Smith,* 225 Pa. Superior Ct. 509, 311 A.2d 716 (1973). When the occupant of the vehicle made a furtive gesture inconsistent with the officer's request, I believe the officer acted reasonably in extricating the appellant from the vehicle. *Cf. Adams v. Williams,* 407 U.S. 143 (1972).

The law of search and seizure requires a balancing of the interests of the individual with those of society. Our legitimate concern for individual rights should not be permitted to obscure its counterweight—the interests of society—here manifested in the safety and lives of the police officer on the street. When an officer has a reasonable suspicion that a citizen is armed (and therefore inherently dangerous) and is confronted by a furtive gesture, I believe the officer must be permitted to act reasonably to protect himself.

In my opinion the currency of individual rights is not depreciated by brief investigatory stops based upon "specific and articulable facts," *Terry v. Ohio,* 392 U.S. 1, 21 (1968), which give rise to reasonable suspicions that criminal activity is afoot. I would hold that the initial approach of the vehicle was lawful and that the furtive gesture by the appellant coupled with the officer's suspicions that the occupants were armed provided justification for retrieving the weapon.

Watkins, P.J., and Van der Voort, J., join in this dissenting opinion.