## Commonwealth *v.* Boyer, Appellant.

Submitted March 10, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Barry H. Denker,* and *Shuman, Denker & Land,* for appellant.

*Marion E. MacIntyre,* Deputy District Attorney, and *LeRoy S. Zimmerman,* District Attorney, for Commonwealth, appellee.

216

OPINION BY PRICE, J., September 22, 1975:

On the night of February 29, 1973, Officers Robert C. Geary and Richard E. Cecconello of the Pennsylvania State Police, were on midnight patrol on the Pennsylvania Turnpike in Lower Swatara Township, Dauphin County. Confidential information had been received by the State Police concerning a white over black Cadillac which was allegedly transporting heroin between Philadelphia and Harrisburg.

The officers observed what appeared to be a 1969 white over black Cadillac convertible enter the Pennsylvania Turnpike at the Harrisburg East Interchange. Upon stopping the auto, the officers saw that it was a white over dark blue Cadillac convertible. As the officers approached the car from opposite sides, they observed the appellant, who was driving, and two passengers, Jacqueline Hudson in the right-front seat, and Leon Ryland Brown in the rear seat.

When Officer Cecconello looked inside the car with his flashlight, he noticed Ms. Hudson attempting to hide something. He testified that there appeared to be glassine packets in her right hand. He then requested that she get out of the car. In her possession were packages wrapped with a red rubber band which later investigation revealed to contain heroin. Everyone was then ordered out of the car and searched. Appellant was found to be in possession of $460 in small-denomination bills. Leon Brown, the other passenger, was found to have $310 in the rear pocket of his pants.

All three occupants of the car were arrested and subsequently indicted. Their cases were consolidated for trial and after waiving a jury trial, the accused were found guilty of unlawful possession of narcotic drugs.[1] This appeal is brought by appellant only, in which he raises two main issues.

---

1. Act of Sept. 26, 1961, P.L. 1664, §4(q) (35 P.S. §780-4(q)).

Appellant first contends that the stopping of the vehicle and the seizure of the heroin were illegal. He relies on the recent case of *Commonwealth v. Swanger,* 453 Pa. 107, 307 A.2d 875 (1973), to support his position. The facts in *Swanger, supra,* are as follows: On April 1, 1970, at approximately 3:45 a.m., two Pennsylvania State Police Officers stopped an automobile in which Glenn Swanger was a passenger.[2] During the questioning one of the officers pointed his flashlight into the automobile and noticed burglary tools on the floor. The two passengers were then arrested for possession of burglary tools. The arresting officer testified that he saw nothing unusual about the vehicle or the manner in which it was operated before he ordered the stop. On these facts, the *Swanger* court held that the Fourth Amendment prohibited routine or spot checks of automobile operators. The court stated at 112: "We rule before the government may single out one automobile to stop, there must be specific facts justifying this intrusion." This rationale follows that articulated by the Supreme Court of the United States in *Terry v. Ohio,* 392 U.S. 1, 21 (1968), wherein that Court stated: "And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."

The Commonwealth attempts to distinguish the present case from *Swanger, supra,* by arguing that there was probable cause for the officers to stop the Boyer automo-

---

2. The automobile was stopped pursuant to The Vehicle Code of Pennsylvania, Act of April 29, 1959, P.L. 58, §1221; Act of July 16, 1970, P.L. 487, No. 166, §1 (75 P.S. §1221 (b)), which provides: "Any peace officer, who shall be in uniform, and shall exhibit his badge or other sign of authority, shall have the right to stop any vehicle, upon request or signal, for the purpose of inspecting the said vehicle, as to its equipment and operation, or manufacturer's serial number or engine number, and securing of such other information as may be necessary."

bile, based upon confidential information which was sent over the State Police teletype. However, this information was not shown to be that of a reliable informant.

Trooper Geary testified as follows at the Suppression Hearing:

"Q. You said you had a reliable informant. Was this information given to you before you went onto patrol?

A. No, I did not say I had a reliable informant. I said we had confidential information that such a vehicle was traveling. This was put out on the police teletype network for State Police use." (Suppression Hearing NT 10)

At trial, he stated:

"A. We saw a vehicle entering the Pennsylvania Turnpike system at the Harrisburg East Interchange and was approaching on our right headed eastbound. I saw that the vehicle was a white over what appeared to be black cadillac convertible, approximately '69 or '70 at that time. It turned out to be a '69. The vehicle approached. I pulled off the highway to leave it pass. After it passed I pursued and pulled the vehicle off the road approximately half a mile.

Q. Upon stopping it, what did you do?

A. The vehicle was stopped. I approached the driver's side. Trooper Cecconello approached the passenger's side.

Q. Why did you stop that vehicle?

A. It was stopped for a routine traffic check and for a check of a vehicle that had been transporting heroin from Philadelphia to the Harrisburg area.

Q. Where did you get that information?

A. Confidential information that was sent to our barracks by teletype." (NT 6-7)

Since there was nothing to show the information to be reliable, the police had not established probable cause to stop the automobile. In *Swanger,* the court stated at

112: "We rule before the government may single out one automobile to stop, there must be specific facts justifying this intrusion. To hold otherwise would be to give the police absolute, unreviewable discretion and authority to intrude into an individual's life for no cause whatsoever." The Commonwealth has not met this test. There is absolutely no evidence in this record to establish the necessary probable cause to stop this vehicle. The information that these officers received by teletype, without more, did not establish probable cause to stop a white over black Cadillac. *See Betrand Appeal,* 451 Pa. 381, 303 A.2d 486 (1973). And these officers, prior to the stop, observed this vehicle to be white over blue.

Since the record is clear that the officers had no probable cause to stop the automobile in which Boyer was riding, the stop was constitutionally impermissible, and the "fruits" of the unlawful stop or seizure should have been suppressed. *See Wong Sun v. United States,* 371 U.S. 471 (1963).

Because the evidence must be suppressed there is no need to resolve the other questions raised on this appeal. Further, such suppression, since it applies to all of the Commonwealth's case, makes the granting of a new trial useless. The order of the lower court denying the Motion in Arrest of Judgment and the Judgment of Sentence are reversed and appellant discharged.

---

DISSENTING OPINION BY JACOBS, J.:

I dissent.

This case involves the stop of an automobile on less than probable cause and presents the question of whether such an investigative stop is ever permissible or whether such stops are completely forbidden. The majority interprets the decision in *Commonwealth v. Swanger,* 453 Pa. 107, 307 A.2d 875 (1973) as forbidding the stop of any vehicle on less than probable cause. I cannot agree,

however, that the *Swanger* decision mandates such a result.

In *Commonwealth v. Smith*, 225 Pa. Superior Ct. 509, 512, 311 A.2d 716, 718 (1973), we noted that "there is nothing unconstitutional about the brief detention of an individual, under circumstances not justifying arrest, for the purpose of investigating possible criminal activity." The United States Supreme Court in *Adams v. Williams*, 407 U.S. 143 (1972) recognized that a police officer may sometimes be presented with suspicions of criminal activity without possessing the requisite facts of probable cause. "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Id.* at 146.

The Court in *Commonwealth v. Swanger*, supra, invalidated an investigative stop of an automobile where the stop was merely "routine" and was made with no basis which could approach the "specific and articulable facts" standard of *Terry v. Ohio*, 392 U.S. 1, 21 (1968). *See Commonwealth v. Boyer*, 455 Pa. 283, 314 A.2d 317 (1974) (stop based upon "unusual look" of driver unlawful). The case before us, however, does not involve the situation of a routine traffic stop. It involves a situation almost identical to that which confronted this Court in *Commonwealth v. Brown*, 228 Pa. Superior Ct. 158, 323 A.2d 104 (1974). Therein this Court upheld an investigatory stop based upon the reasonable suspicions of the officer where the reliability of an informant who had supplied information had not been established. We held that "[a]rmed with the informant's tip and his own personal observation, the arresting officer was justified in believing that criminal activity was afoot. Under these circumstances, he acted in a reasonable manner by stopping the Cadillac for investigation." *Id.* at 163, 323 A.2d at 106. *See United States v. Hernandez*, 486 F.2d 614 (7th Cir. 1973).

I believe that the troopers in the case at bar acted reasonably and permissibly in making a brief investigatory stop of the vehicle in question. Because the stop was permissible the lower court was correct in its decision.

WATKINS, P. J., and VAN DER VOORT, J., join in this dissenting opinion.