## Commonwealth *v.* Benson, Appellant.

Submitted September 8, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*John W. Packel*, Assistant Defender, and *Benjamin Lerner*, Defender, for appellant.

*Francis C. Barbieri, Jr., Mark Sendrow*, and *Steven H. Goldblatt*, Assistant District Attorneys, *Abraham J. Gafni*, Deputy District Attorney, and *F. Emmett Fitzpatrick*, District Attorney, for Commonwealth, appellee.

OPINION BY VAN DER VOORT, J., March 29, 1976:

On December 1, 1974, at approximately 9:20 A.M., Officer Craig Baker of the Philadelphia Police Force received a Police Department radio report advising him to be on the lookout for a dark-skinned Negro male, approximately 6 feet tall, in a brown leather coat, driving a late-model dark green Ford station wagon with the first two numbers of the license plate 4 and 0. The suspect was wanted for investigation in the possible sale of guns and a check-writing machine. One hour after hearing the report, Officer Baker stopped Jesse Benson, appellant in this case. Appellant was wearing a brown leather coat, and was driving a late-model dark green Ford station wagon with a license plate with the first two numbers 4 and 0. When Officer Baker asked to see appellant's owner's card and driver's license, appellant replied that he did not have a driver's license and that he did not have the owner's card for the car. Officer Baker testified that he was unable to radio in to the station to find out if the car had been stolen since the computer was down at the time; furthermore, Officer Baker was unable to rely on the latest "hot sheet", since the sheets were not published on weekends.

Acting reasonably under the circumstances, Officer Baker took appellant into custody for transportation to the police station. After placing appellant in the police wagon, and before leaving for the station, Officer Baker looked in the back seat of the station wagon which appellant had been driving, and discovered, under a green mat or old rug, a check-writing machine. After

arrival at the police station, an investigation disclosed that the Ford station wagon had been stolen sometime between 6:45 and 10:30 the previous evening. Appellant was charged with theft of the auto, unauthorized use of the auto, and with receiving stolen goods.

Appellant moved to suppress all evidence discovered as the result of his allegedly-illegal arrest. A hearing on the suppression motion was held on April 3, 1975,. at which time the motion was denied. Officer Baker was the only witness to testify at this hearing. Appellant was tried by a judge sitting without a jury immediately following the denial of the suppression motion. The judge found appellant guilty of theft, unauthorized use of an auto, and receiving stolen property, and sentenced appellant to 5 years probation. Appellant appealed from the judgment of sentence, arguing that the evidence of his possession of the automobile should have been suppressed as fruit of an unlawful arrest, since the Commonwealth allegedly "failed to satisfy its burden of establishing probable cause for transmitting the police radio bulletin which prompted the arrest."

Appellant relies on the U.S. Supreme Court case of *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U. S. 560, 91 S. Ct. 1031, 28 L.Ed. 2d 306 (1971), as support for his argument. In *Whiteley*, a warrant had been issued for the arrest of specific named individuals, and a police officer stopped a car with the object of arresting those individuals. The information which the arresting officer relied upon was based on information supplied for the warrant by an unnamed informer, and the Supreme Court specifically found that the warrant was not based on sufficient probable cause. The Court went on to say however (at 567), that "where the initial impetus for an arrest is an informer's tip, information *gathered by the arresting officers* can be used to sustain a finding of probable cause for an arrest that could not adequately be supported by the tip alone." (Emphasis added). The Court found that there was no such new information

obtained by the arresting officer, and reversed the denial of the suppression motion. The implication is that police may rely upon information which is broadcast over the police radio in order to justify an initial stop of an automobile suspected of having been involved in criminal activity. The arrest of persons thus stopped can then be justified either by demonstrating that probable cause existed for the issuance of the police bulletin,[1] or by showing that information obtained during the stop by the arresting officers gave rise to probable cause for an arrest. In *Whiteley*, there was no probable cause for the issuance of the warrant (and, consequently, no probable cause for the police bulletin), and there was no new information disclosed by the stop. The Supreme Court therefore reversed. In the case before us, new information - inability of the driver to produce a driver's license or owner's card - came to light at the time of the stop, and this information was sufficient to justify Officer Baker's action in taking appellant to the police station.

In *Commonwealth v. Brown*, 228 Pa. Superior Ct. 158, 323 A.2d 104 (1974), police officers who had been informed that a certain individual had just engaged in selling narcotics, stopped a car in which that person was riding, and saw him drop two silver-colored packets to the ground. Our Court reversed the grant of a motion to suppress the fruits of that stop, holding that the police initially did not have probable cause to effect an arrest, but that subsequent events (appellant's attempt to dispose of the narcotics) did justify the arrest. The situation in *Brown* was essentially the same as the situation now before us - there was initially no probable cause (at least none demonstrated at the suppression hearing) for an arrest, but events at the time of the stop justified an arrest. In *Brown*, the only person to testify at the suppression hearing was one of the arresting officers, and his testimony was ambiguous as to whether he

---

1. See *Commonwealth v. Jones*, 233 Pa. Superior Ct. 461, 335 A.2d 789 (1975).

himself, or officers out of that officer's presence, had received the information (the tip) which might have constituted probable cause. (In any event, we held that probable cause was lacking). In the case before us, the only witness to testify at the suppression hearing was Officer Baker, the arresting officer, who, as only the recipient of the bulletin, was unable to demonstrate probable cause for the issuance of the police bulletin. Both in *Brown* and in the case before us, new information became available to the police at the time of the stop: in *Brown*, silver-colored packets that fell to the ground; in our case, inability of the driver to produce a driver's license or owner's card.

A second case very similar to the one before us is *Commonwealth v. Boyer*, 236 Pa. Superior Ct. 214, 345 A.2d 187 (1975). In *Boyer*, State Police Officers on turnpike patrol received radio instructions to be on the lookout for a "white-over-black" Cadillac suspected of transporting heroin between Philadelphia and Harrisburg. The officers observed what they thought was a white-over-black Cadillac convertible enter the Harrisburg East interchange and, pursuant to the radio bulletin, stopped the car for investigation. On approaching the car, the officers noticed that it actually was white over *dark blue*. When one of the officers shined his flashlight inside the car, he noticed that one of the passengers was attempting to hide something, and that there appeared to be glassine packets in that passenger's right hand. Further investigation disclosed packages of heroin. Appellant (the driver) and the two passengers were arrested, tried, and found guilty of possession of narcotics. Our Court, relying on *Commonwealth v. Swanger*, 453 Pa. 107, 307 A.2d 875 (1973), reversed the lower court's denial of a suppression motion.

We find that neither *Swanger* nor *Boyer* is controlling in the case before us. In *Swanger*, our Supreme Court reversed the lower court's denial of a suppression motion, since the police had stopped a vehicle for merely

a "routine" check, "even though the officers observed nothing unusual about the vehicle beforehand." *Boyer* is distinguishable in the sparsity of information that was available to the arresting officers, who only knew that a certain color Cadillac was suspected of transporting heroin between Philadelphia and Harrisburg. Whether or not such information alone might have justified an investigatory stop, the fact that the car was a different color precluded a majority of our Court from affirming the denial of the suppression motion. In *Boyer*, the police were not justified in believing that appellant was engaging in criminal activity, and the stop and subsequent discovery of narcotics was therefore illegal. *Brown*, not *Boyer*, is controlling in the case before us.

In the 1972 Supreme Court case *Adams v. Williams*, 407 U.S. 143, 92 S. Ct. 1921, 32 L.Ed. 2d 612 (1972), Justice REHNQUIST, expressing the view of six members of that Court stated:

"The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response.... A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." 407 U.S. at 145-46, 92 S. Ct. at 1923. This language is consistent with *Whiteley*, and forms a logical basis for the decision we reached in *Brown*. We should permit our police in the early stage of their investigative work (before a warrant has been issued for specific individuals), to adopt the "intermediate response" mentioned in *Adams* - to rely on radio information for the purpose of detaining individuals suspected of criminal activity, at least long enough to determine identity. If such a stop can be shown to actually have

been based on probable cause, or if the stop discloses new information, then the police should be permitted to proceed in a reasonable manner, detaining for further investigation, or, where appropriate, making an arrest. In the case before us, Officer Baker stopped a car which matched the description of a car suspected of having been used for criminal activity. A check of the driver's identification disclosed that the driver did not have a driver's license, and did not have the owner's card with him. Officer Baker acted reasonably in attempting to determine whether or not the car had been stolen — certainly a possibility under the circumstances. We hereby reaffirm our decision in *Commonwealth v. Brown, supra,* and, following the lead of cases such as *United States v. Hernandez,* 486 F.2d 614 (7th Cir. 1973), *cert. denied,* 415 U.S. 959 (1974) and the dictum of *Adams* and *Whiteley,* affirm the lower court's denial of the suppression motion.

Judgment affirmed.

JACOBS, J., concurs in the result.

CONCURRING OPINION BY PRICE, J.:

The majority interprets *Commonwealth v. Boyer,* 236 Pa. Superior Ct. 214, 345 A.2d 187 (1975) as hinging upon the difference in the car color there involved when it concludes "the fact that the car was a different color precluded a majority of our Court from affirming the denial of the suppression motion." I do not accept this distinction for after observing that the car involved in *Boyer* was actually white over blue and the confidential information the officers received by teletype apparently specified white over black, the majority in *Boyer* states: "The information that these officers received by teletype, without more, did not establish probable cause to stop a white over black Cadillac." 236 Pa. Superior Ct. at 219, 345 A.2d at 189-90.

However, I agree that this case is not controlled by *Commonwealth v. Swanger,* 453 Pa. 107, 307 A.2d 875 (1973).

The facts before us, as correctly set forth by the majority, seem to place this case between *Boyer, supra,* and *Commonwealth v. Brown,* 228 Pa. Superior Ct. 158, 323 A.2d 104 (1974).

Because the information here involved was specific in all details, I would hold that it is in that spectrum of possible fact situations that come close to *Brown, supra.* In *Boyer,* there is no description of the occupants of the car, while here the personal descriptive information closely matches the officer's observation of appellant, including items of clothing, and the information also was specific as to the driving of the described car by appellant. The information was accurate as to a late-model dark green Ford station wagon. And finally, the first two numbers of the license matched, which, taken alone, would probably apply to thousands of cars in this Commonwealth, but which, considered with the accuracy of the other detail, confirms the accuracy of the officer's information. Therefore while I disagree with the majority that a match of color alone is enough to distinguish *Boyer, supra,* I concur that in this appeal the information the officer received by police radio, standing alone and unsupported by corroborative testimony, does establish probable cause to stop this appellant and this car.

I concur in affirming the judgment of sentence.

DISSENTING OPINION BY HOFFMAN, J.:

I agree with the Majority that the arresting officers had the right to stop the appellant's automobile on the basis of the radio call. I would hold, however, that when the underlying basis for the radio bulletin is not established, an otherwise illegal stop cannot be insulated from challenge merely because the arresting officer relied on the radio call.

The Majority relies on *Whiteley v. Warden,* 401 U.S. 560, 567 (1971), to support its holding: "... where the initial impetus for an arrest is an informer's tip, information gathered by the arresting officers can be

used to sustain a finding of probable cause for an arrest that could not adequately be supported by the tip alone." The Majority then states that *Whiteley* implies "that police may rely upon information which is broadcast over the police radio in order to justify an initial stop of an automobile suspected of having been involved in criminal activity. The arrest of persons thus stopped can then be justified either by demonstrating that probable cause existed for the issuance of the police bulletin, or by showing that information obtained *during the stop* by the arresting officers gave rise to probable cause for an arrest." (Footnote omitted). (Emphasis supplied). (Majority opinion at 104).

The Majority, however, misapplies *Whiteley*. In *Whiteley*, the State of Wyoming asserted two separate justifications for the arrest of the appellant: that the arresting officers independently possessed probable cause to arrest, or in the alternative, that the officers relied on a police radio call. The statement relied upon by the Majority does not refer to the radio call, but to the assertion of independent probable cause. Regarding independent probable cause, the Supreme Court noted that the tip alone was not independently reliable. If information could be obtained to "support either the reliability of the informant or the informant's conclusion that these men were connected with the crime", the arresting officers would have possessed independent probable cause to arrest. *Whiteley v. Warden*, supra, at 567. This information, however, must be obtained *before* the officers infringe upon the accused's Fourth Amendment rights. See *Spinelli v. United States*, 393 U.S. 410 (1969). An infringement of Fourth Amendment freedoms cannot be justified by information obtained after the accused's rights have been violated.

Regarding the arresting officers' reliance on the radio bulletin, the Court stated: "We do not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin. Certainly police

officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal ·arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest." *Whiteley v. Warden*, supra, at 568. Thus *Whiteley* supports two means of upholding the arrest: the arresting officers must possess independent probable cause, or the radio call upon which the arrest is based must be supported by probable cause.

The Pennsylvania authority cited by the Majority further demonstrates its confusion regarding *Whiteley*. In *Commonwealth v. Brown*, 228 Pa. Superior Ct. 158, 323 A.2d 104 (1974), the arresting officer personally received information from an informant that the appellant had been selling drugs. Because the reliability of the informant was not established, we held that probable cause was absent. However, the tip, together with the officer's personal observations corroborating part of the tip, supplied reasonable suspicion that criminal activity was afoot. Thus, the officer acted properly in stopping the automobile in which the appellant was riding. In *Brown*, therefore, the arresting officer independently had sufficient cause to stop the car.

In *Commonwealth v. Boyer*, 236 Pa. Superior Ct. 214, 345 A.2d 187 (1975), on the other hand, the officer did not independently have sufficient cause to stop the car. Thus, the only basis on which to support the arrest was a teletype bulletin. Because the information contained in the teletype bulletin was not proven to be reliable, we held the arrest improper. In *Boyer*, therefore, the arresting officer acted on the strength of an unreliable teletype bulletin, and we held the arrest illegal.

In the instant case, it cannot seriously be argued that the arresting officer independently had cause to stop the

car. Thus, the stop must be justified on the basis of the radio bulletin. At the suppression hearing, however, the only witness to testify was the arresting officer who did not know the basis for the radio call. There being no underlying basis shown for the radio call, the initial stop of the appellant's automobile necessarily was illegal. The stop cannot be justified by information obtained subsequent to the stop. Under the Majority's rationale, however, officers without reasonable suspicion to stop a suspect can issue a radio call and have other officers stop the suspect. The stopping officers would then be able to obtain sufficient information to justify the stop. This has never been the law.

SPAETH, J., joins in this dissenting opinion.