Commonwealth *v.* Ayers, Appellant.

Submitted September 8, 1975. Before WATKINS, P.J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Ernest Kardas*, Assistant Public Defender, and *Kenneth P. Barrow*, Public Defender, for appellant.

*Anna Iwachiw Vadino*, *Ralph B. D'Iorio*, and *William J. Davies*, Assistant District Attorneys, and *Stephen J. McEwen, Jr.*, District Attorney, for Commonwealth, appellee.

OPINION BY PRICE, J., March 29, 1976:

On October 8, 1974, appellant-defendant Donald Ayers was convicted by a jury of burglary, aggravated assault, attempted murder, possession of a firearm without a license, and criminal conspiracy. On this appeal, appellant contends that the lower court erred in failing to suppress certain evidence. He also maintains that the evidence adduced at trial was insufficient to support his convictions. We find no merit to appellant's contentions, and, therefore, will affirm the judgment of sentence of the lower court.

The facts, read in a light most favorable to the verdict-winner, *Commonwealth v. Young*, 233 Pa. Superior Ct. 429, 335 A.2d 498 (1975), are as follows: On the morning of March 20, 1974, the victim, Martha C. Ferrell, was finishing her housework when she heard a knock at the door. Before she could respond to the door, the telephone rang. Mrs. Ferrell answered the telephone first. A woman on the other end of the line identified herself as a Mrs. Anderson, and informed Martha Ferrell that her (Mrs. Anderson's) husband was on his way to the Ferrell home to look at some antique cars owned by Mr. Ferrell. The caller then asked to be able to speak to her husband upon his arrival. Mrs. Ferrell told the caller that someone was presently at her door, and asked the caller to remain on the line while she answered it.

The person at the door turned out to be the appellant, who identified himself as Mr. Anderson, and Mrs. Ferrell led him to the phone. A conversation ensued between the caller and the appellant, out of Mrs. Ferrell's presence. When appellant finished his call, he and Mrs. Ferrell began to discuss antique cars. Mrs. Ferrell informed appellant that her husband did not keep his antique cars at home, which, to Mrs. Ferrell's surprise, seemed to drive appellant into a rage. He grabbed Mrs. Ferrell by the throat and began to choke her. Mrs. Ferrell managed to bite appellant severely on

his gloved finger and appellant struck her on the head with a lamp, drawing blood. Finally, Mrs. Ferrell told appellant that he would not "get away with it" because he was being observed by a neighbor across the street. Upon hearing this, appellant ceased his attack. He asked for time to comb his hair, straighten his clothing, and regain his composure. Then, he left.

When appellant began to drive away, Mrs. Ferrell ran from her home, screaming that she had been attacked. A young neighbor, building a house across the street, heard her, saw the blood streaming from the wound on her head, and set out in pursuit of the fleeing appellant. He followed appellant long enough to identify the make, model and license number of appellant's automobile. Meanwhile, Mrs. Ferrell had summoned the Ridley Township Police, who arrived within minutes. When the neighbor returned to the Ferrell home, he gave his information to the police. The police radioed the information to their department, and the department issued a bulletin ordering police officers in the area to arrest the occupant of the vehicle. The bulletin contained a brief description of appellant and of the vehicle and stated that appellant was wanted on the charge of assault.

Minutes later, Officer Raymond Suydam of the Springfield Township Police Department observed the suspect vehicle pulling into the Sproul Shopping Center. The officer pulled into the parking lot and parked behind appellant's vehicle. Appellant saw the officer and got out of his car. He walked back towards the officer, carrying a briefcase in his hand. Officer Suydam told appellant to stand near his car and asked to see appellant's driver's license.

At that moment, Officer Jack Francis, also of the Springfield Township Police Department, arrived. Appellant handed his license and registration to Officer Francis, and Officer Francis then proceeded to frisk appellant. The frisk uncovered a .22 caliber derringer

carried in appellant's right front jacket pocket. After the appellant was handcuffed, Officer Suydam told Officer Francis that appellant had been carrying the briefcase, which was resting three or four feet away. On top of the briefcase, Officer Francis discovered a map of Delaware County, with the location of the Ferrell residence encircled. Officer Francis opened the briefcase and discovered a blackjack, a loaded .38 caliber Smith and Wesson revolver, a loaded 9 millimeter automatic pistol and a round of ammunition. Also contained in the briefcase was a glove with one finger severed. The mate to that glove was found by police at the Ferrell residence, together with the missing finger of the single glove found in the briefcase. Subsequently, appellant was turned over to the Ridley Township Police.

The evidence further established that appellant was the brother of Janet Wolski, his co-defendant in the lower court. Janet Wolski had been the girlfriend of Mr. Ferrell, the victim's husband, for over a year prior to the attack on Mrs. Ferrell. The co-defendants had often discussed the possibility of murdering Mrs. Ferrell. Janet Wolski was the caller on the phone to whom Mrs. Ferrell spoke on the morning of the attack, and on the day before the attack, Janet Wolski rented the car for her brother to drive. However, appellant testified that on the day in question, he had gone to Mrs. Ferrell's house solely with the intention of talking with her.

Appellant contends that the physical evidence introduced at trial should have been suppressed because it was the fruit of an illegal arrest. Specifically, appellant contends that the arresting officers, Suydam and Francis, did not have probable cause to arrest him because the facts and circumstances within their knowledge did not give them probable cause to believe that appellant had committed a felony. Appellant notes that the bulletin to which the officers responded only indicated that appellant had committed assault. Because assault is not a felony, and because the arresting officers

did not actually observe appellant commit an assault, they had no probable cause to arrest him.

The Commonwealth, on the other hand, contends that the police officers had a right to rely on the bulletin issued over the radio which ordered the appellant's arrest. We agree with the Commonwealth.

In *Commonwealth v. Kenney*, 449 Pa. 562, 297 A.2d 794 (1972), a similar argument was raised. There, the Pennsylvania Supreme Court held:

"[W]e do not believe it was necessary for the arresting officer to have knowledge of the information which supported the probable cause for arrest. The operative question is whether Lieutenant Patterson, the officer who ordered the arrest, had sufficient information to support a finding of probable cause. (footnote omitted) Detective Molinari was merely carrying out the order of his superior officer. He did not undertake on his own initiative to arrest appellant, rather it was on the command of his superior that he made the arrest. Hence, the question for discussion is whether Lieutenant Patterson had knowledge of facts and circumstances sufficient to constitute probable cause to arrest." 449 Pa. at 566-67, 297 A.2d at 796.

After concluding that Lieutenant Patterson had probable cause to arrest, the court affirmed the defendant's conviction.

In *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560 (1971), a warrant was issued for the defendant's arrest and a description of the defendant was transmitted over the police radio. In reliance on the bulletin, a police officer arrested the defendant. The Court held that the defendant's arrest was unlawful because (1) there was no probable cause for the issuance of the warrant, and (2) the arresting officer did not have sufficient facts and circumstances within his personal knowledge to constitute probable cause to arrest. Thus, in *Whiteley*, the *bulletin* on which the arresting officer relied was not based on probable cause. The Court stated:

"We do not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the investigating officer to rely on fellow officers to make the arrest." 401 U.S. at 568.

*Commonwealth v. Boyer*, 236 Pa. Superior Ct. 214, 345 A.2d 187 (1975), can be similarly distinguished. In that case, defendant's automobile was stopped while traveling on the Pennsylvania Turnpike, pursuant to information sent over the Pennsylvania State Police teletype. However, facts and circumstances underlying the information were not in the record and the arresting officers did not have personal knowledge of facts and circumstances sufficient to constitute probable cause to arrest. Thus, in *Boyer*, as in *Whiteley*, probable cause to arrest was never shown.

That is not true of this case. It is clear that the officers of the Ridley Township Police Department who responded to Mrs. Ferrell's call had probable cause to arrest appellant. Mrs. Ferrell told the officers of the attack and they personally observed her bloodied condition. This gave the officers personal knowledge of sufficient facts and circumstances to reasonably conclude that a felony had been committed. These officers testified to their observations in court. Therefore, the radio bulletin pursuant to which appellant was arrested is supported in the record by probable cause, and the arresting officers lawfully arrested appellant in reliance on that bulletin. *See also, Weeks v. Estelle*, 509 F.2d 760 (5th Cir. 1975), and *United States v. See*, 505 F.2d 845 (9th Cir. 1974), *cert. denied*, 420 U.S. 992 (1975).

Appellant admits, and there can be no doubt, that if the arrest was lawful, then the subsequent search of his person was also lawful as incident to a lawful arrest. *Commonwealth v. Spriggs*, 224 Pa. Superior Ct. 76, 302 A.2d 442 (1973). Appellant contends, however, that the search of his briefcase was not incident to the arrest, and that the contents of the briefcase should not have been admitted into evidence. Appellant argues that searches incident to an arrest are usually justified on the grounds of being necessary to protect the arresting officer against concealed weapons or to prevent the destruction of contraband. *Chimel v. California*, 395 U.S. 752 (1969). Because appellant had been subdued before the search of the briefcase was initiated, he contends that those justifications do not apply in this case.

The holdings in two independent lines of cases may be applied to the search performed in this case. The first stems from *Chimel v. California, supra*, correctly cited by appellant as authorizing searches incident to an arrest. *Chimel* does justify such searches on the grounds that they are necessary to protect the officer from concealed weapons or to prevent the destruction of evidence. Such a search may extend to areas within the arrestee's immediate control. We do not believe, however, that the authority to perform incidental searches is eliminated immediately upon bringing the arrestee under control. Indeed, the case would be rare in which an officer began to search prior to subduing the arrestee. *See, Commonwealth v. Smith*, 452 Pa. 1, 304 A.2d 456, *cert. denied*, 414 U.S. 1076 (1973). Under the circumstances of this case, where appellant was seen carrying the briefcase just prior to his arrest, where he had placed the briefcase on the ground only seconds before his arrest, and where the search was performed immediately following the arrest, the search is justified as incident to the arrest.

The second applicable line of cases commenced with

*Carroll v. United States*, 267 U.S. 132 (1925), and was recently rejuvenated in *Chambers v. Maroney*, 399 U.S. 42 (1970). *Chambers* recognized that automobile stops are a special category under the fourth amendment. The Court held that an automobile may be searched where the police have probable cause to believe that it contains articles properly subject to seizure. In this case, if the briefcase had been located inside the automobile, there would be no doubt that the search would be justified under *Chambers, supra.* The lawful discovery of the concealed derringer supplied the officer with probable cause to search the vehicle and its contents. *See, Commonwealth v. Smith, supra. See also, Commonwealth v. Jones*, 233 Pa. Superior Ct. 461, 335 A.2d 789 (1975). The fact that the briefcase was resting on the ground instead of in the car, at the time that it was seized, is not a relevant distinction under the facts of this case. The circumstances surrounding the stop of the automobile is the context in which this search must be viewed, and, in that context, the search was reasonable.

Appellant also contends that the contents of the briefcase should not have been admitted into evidence because they were irrelevant. However, appellant failed to raise this issue in his post-trial motions, and it is thus waived. *Commonwealth v. Bronaugh*, 459 Pa. 634, 331 A.2d 171 (1975).

Appellant's final argument is that the evidence was insufficient to support his convictions. Accepting as true all of the evidence and all of the inferences reasonably deducible therefrom, upon which, if believed, the jury could properly have based its verdict, the evidence was sufficient in law to prove beyond a reasonable doubt that the defendant is guilty. *Commonwealth v. Clark*, 454 Pa. 329, 311 A.2d 910 (1973).

The judgment of the lower court is affirmed.

JACOBS and SPAETH, JJ., concur in the result.