## JAMES THOMAS PRICE a/k/a Thomas Leverne Price v. STATE OF MARYLAND

[No. 1129, September Term, 1976.]

*Decided September 9, 1977.*

The cause was argued before MORTON, MOORE and LOWE, JJ.

*Arthur A. DeLano, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Leroy Handwerger, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Michael P. Whalen, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

When a stop-and-frisk resulting from a radio lookout leads to an arrest, search and seizure, is it incumbent upon the State in a subsequent suppression hearing to establish the sources of the information — and the reliability thereof — from which the police alert originated? We hold that it is, in this case, where the radio alert and the stop occurred three weeks after the crime.

The appellant, James Thomas Price, was convicted at a jury trial in the Circuit Court for Prince George's County (McCullough, J.) of burglary, two counts of robbery with a deadly weapon, use of a handgun in the commission of a felony and unlawfully carrying a handgun. He was sentenced to 10 years imprisonment.[1] On appeal, he contends that the trial judge erred in denying his motion to suppress evidence and in refusing to exclude an in-court identification by a State's witness following an alleged violation of a sequestration order.

We find that a shotgun seized at the time of appellant's arrest, later introduced into evidence, was obtained in violation of appellants's Fourth Amendment rights. We reverse on that ground and do not reach the sequestration question.

I

At trial, there was evidence from which the jury could find that Floyd and Barbara Newbegin of Riverdale, Prince George's County were robbed by two masked men at gunpoint while at home, in bed, in the early hours of March 29, 1975. The appellant was identified at trial by both victims as one of the perpetrators. They said he was armed with a sawed-off shotgun and was wearing a woman's stocking over his face.

Three weeks later, on April 18, 1975, Officer Kenneth P. Bogue of the Prince George's County Police received a radio alert, while on routine patrol in Hyattsville, for an armed

---

1. The appellant was given a 10 year sentence for the burglary conviction; 10 years each on the two robbery counts; and 3 years each for the handgun convictions, each of the sentences were imposed concurrently.

robbery suspect. The broadcast named James Price, who was believed to be driving a 1966 silver Cadillac with Maryland tags BKS 724, and stated that the suspect was in possession of a shotgun, stolen goods and narcotics.

Fortuitously, Officer Bogue observed in his rear view mirror a vehicle matching the radio description. The policeman cautiously waited for the suspect's car to pull into a gas station and the occupant, later identified as the appellant, alighted from the car. At that time, the officer approached appellant and turned him around to pat him down for weapons. When a knife was felt in the appellant's pocket, the officer seized it and arrested him for carrying a concealed weapon. The appellant then identified himself as James Price.

While the car was still parked at the service station, another officer, Daniel Statkus, searched the trunk. A footlocker was found which contained personal effects, a shotgun, 2 cameras and an undisclosed amount of heroin.[2]

Appellant argues that the State failed to establish at the suppression hearing the requisite "reasonable suspicion" to justify Officer Bogue's stopping the appellant and frisking him for weapons. Consequently, it is argued, the admission of the shotgun into evidence was improper and constituted reversible error. Alternatively, it is contended that even if the "stop and frisk" was justified, the police were required to obtain a warrant before searching appellant's car. Because we find that the State failed to justify the stop and frisk, we need not examine the alternative assignment of error.

## II

At the outset, we note what is not involved in this case. The State does not contend, and it should not, that Officer Bogue had probable cause to arrest the appellant at the time he received the radio alert. See *Whiteley v. Warden*, 401 U. S. 560, 568-69 (1971). Rather, the State seeks to justify Officer Bogue's intrusion upon the constitutionally protected

---

2. The indictment in this case charges only those offenses which occurred on March 29, 1975, the date of the Newbegin burglary.

interests of the appellant by application of the "stop and frisk" doctrine of *Terry v. Ohio*, 392 U. S. 1 (1968).

In *Terry*, the Supreme Court held "that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U. S. at 22. And, in recognition of the danger inherent in the performance of an officer's duties in investigating criminal behavior, "[w]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous," he may conduct a limited and reasonable search for weapons. *Id.* at 30. The measure of the permitted scope of the "stop and frisk" is the Fourth Amendment's "Reasonableness Clause," so that "in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch', but to the *specific reasonable inferences* which he is entitled to draw from the facts in light of his experience." (Emphasis added.) 392 U. S. at 27. The police officer must be able to point to "specific and articulable facts" which would reasonably warrant the particular intrusion, *Id.* at 21, when such intrusion is subjected to the detached and neutral scrutiny of a judge who must evaluate the reasonableness of the officer's actions. 392 U. S. at 21; *Gibbs v. State*, 18 Md. App. 230, 306 A. 2d 587 (1973).

In the instant case, at the suppression hearing, Officer Bogue testified that he had no independent information or knowledge of the appellant's alleged criminal activity. Neither he nor Officer Statkus was a member of an investigative team. The officer stated that the only reason he stopped the suspect, and subsequently frisked him, was the radio alert. The radio broadcast itself, according to the policeman, did not disclose the basis for the issuance of the lookout. Indeed, when the trial judge inquired concerning the source of the police department's information relating to

the radio alert, the State's Attorney responded, "I don't know where that information came from, Your Honor."

The test of the reliability of information received by a police officer immediately prior to a stop is not the same in a case like the present as that which is applicable when police officers converge upon the scene of a crime and, upon the basis of rapid interviews with the victim and/or witnesses, communicate to headquarters a request for a lookout describing the suspects and their means of escape. In such situations a "fair inference" can be made that the information was reasonably reliable and was related by unnamed informants at the scene. *See Mobley v. State*, 270 Md. 76, 310 A. 2d 803 (1973). In *Jones v. State*, 242 Md. 95, 218 A. 2d 7 (1966), the Court recognized that the officer who put out a lookout could not remember exactly who had given him all the information. In this connection, however, the Court observed that the test of the reliability of the information received by an officer on the scene is different from that which obtains when there is time for the procuring of a search warrant. *Id.* at 101. Speaking for the Court, Judge Oppenheimer stated:

> "When a crime of violence has been committed in the early morning hours, and the only chance of apprehending the suspected criminal seems to be a prompt apprehension of the car in which he was driving away, the investigating officer cannot be expected to take the time to ascertain and make notes of the names and backgrounds of all the persons at the scene who told him what they had observed. Our system of justice must be responsive, not only to the needs of individual liberty, but also to the rights of the community. *United States v. Ventresca*, 380 U. S. 102, 112 (1965)." 242 Md. at 101.

But the facts and circumstances involved in this appeal are vastly different. The testifying officer at the suppression hearing had no connection whatsoever with the radio alert nor with the investigation of the crime, and was indeed a

complete stranger to the criminal events which had transpired three weeks before. The State offered no testimony from the police officer or other police employee who may have broadcast the radio alert, nor did it advance any background information pertaining to the broadcast heard by Officer Bogue.

We believe the State failed to meet its burden of specifying the particular and articulable facts upon which the police were justified in intruding upon the appellant's right to personal security. The holdings of *Terry* and its companion case, *Sibron v. New York*, 392 U. S. 40 (1968), make it clear that a "police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a citizen ... *he must have constitutionally adequate, reasonable grounds for doing so.*" (Emphasis added.) 392 U. S. at 64. We cannot accept the argument of the State that the mere broadcast of information over a police radio, in and of itself, constitutes "constitutionally adequate" grounds to justify the intrusion. We hold that the State should have produced some testimony at the suppression hearing to indicate the factual basis upon which the radio alert was issued and thus have enabled the court to evaluate the reasonableness of the "stop and frisk" and the ensuing arrest, search and seizure.

In placing this burden upon the State, we cast no aspersions upon the individual actions of Officer Bogue in this case. Indeed his police action conformed to the highest standards. This, however, is not the issue. As Chief Justice Warren stated in *Terry*, "[T]he issue is not the abstract propriety of the police conduct, but the admissibility against petitioner of the evidence uncovered by the search and seizure." 392 U. S. at 12. In this connection, it cannot be validly maintained that in acting upon the radio alert, Officer Bogue correctly assumed that whoever authorized the lookout had proper grounds to direct that appellant be stopped. Such an argument was rejected by the Supreme Court in *Whiteley v. Warden, supra,* where Wyoming sought to justify a search incident to an arrest, made after a radio

alert, upon the basis of probable cause. The State argued that since the arresting officer received a description of the defendant over a police broadcast he could have "reasonably assumed that whoever authorized the bulletin had probable cause to [arrest]." 401 U. S. at 568. In rejecting this contention, Justice Harlan wrote:

"We do not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin. *Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest.*" (Emphasis added.) *Id. Accord, Peterson v. State,* 15 Md. App. 478, 487, 292 A. 2d 714 (1972).

We recognize, of course, that the grounds upon which a stop and frisk may be supported need not constitute probable cause; but the principle enunciated in *Whiteley v. Warden, supra,* remains the same. The transmission of a description of a suspect over the airwaves does not on its own constitute "reasonable grounds for suspicion."

Here, it was impossible for the trial judge to have determined whether there existed "reasonable grounds" for suspecting the appellant because the State failed to disclose how the police obtained their information ·leading to the issuance of the radio bulletin. That information could have been obtained in a variety of ways — through ordinary police investigation; or through a reliable police informant; or an unreliable informant; a tipster or an eyewitness.[3] Without such evidence, the trial court erred in not

---

**3.** In a colloquy with the trial court on the hearing of another motion, the State's Attorney disclosed that an informant aided the police in their investigation of the Newbegin robbery. Whether this source supplied the police with the information concerning the appellant is not revealed.

suppressing the evidence seized as a result of the "stop and frisk."

The State's reliance upon *Williams v. State,* 19 Md. App. 204 (1973) is misplaced. There, this Court upheld the validity of a "stop and frisk" where the arresting officer, after hearing a police radio broadcast, observed the defendant's car, with four occupants, stationed in a deserted parking lot late at night and the shooting incident which was the subject of the alert had occurred in the same neighborhood some ninety minutes before the officer stopped the defendant. In the case *sub judice,* the robbery had taken place several weeks prior to the radio alert, in a different area of the county and, most significantly, Officer Bogue testified that there were no independent grounds, other than the police alert, to suspect the appellant. Similarly, the trial court's reliance upon *Adams v. Williams,* 407 U. S. 143 (1972) is misplaced. There, the Supreme Court upheld a "stop and frisk" where the police officer acted upon information, from a known informant, that was immediately verifiable at the scene. A more apposite United States case is *United States v. Robinson,* 536 F. 2d 1298 (9th Cir. 1976), involving a vehicle theft in Nevada and apprehension of the accused in Arizona, where it was held that the Government should have presented the factual basis for a radio alert in Arizona in order to justify a subsequent stop and frisk.

Our conclusion that the trial court erred in not suppressing the shotgun is not dispositive of this appeal. Although the testimony of Floyd and Barbara Newbegin, the victims, was sufficient to convict the appellant without the introduction of the shotgun, in order to affirm these convictions we would have "to declare a belief, *beyond a reasonable doubt,* that the [suppression] error in no way influenced the verdict. . . ." (Emphasis added.) *Dorsey v. State,* 276 Md. 638, 659 (1976). Otherwise a reversal is mandated.

The victims testified that they viewed their attackers for only a few minutes from a distance of six to eight feet. However, both of the burglars were wearing stocking masks during the entire holdup. Although both Mr. and Mrs.

Newbegin did identify the appellant as one of the perpetrators, the trial judge stated, "I realize that the eyewitness testimony wasn't the best." Here, the jury heard the testimony of the victims that one of the persons who entered their home, whom they identified as the appellant, carried a sawed-off shotgun. The arresting officer testified that at the time the appellant was apprehended he was carrying in his car a sawed-off shotgun.

Under these circumstances, we cannot say "that there is no reasonable possibility that the evidence complained of . . . may have contributed to the rendition of the guilty verdict." *Dorsey, supra,* 276 Md. at 659.

> *Judgments reversed; case remanded for a new trial; Prince George's County to pay the costs.*