393 A.2d 348

**COMMONWEALTH of Pennsylvania**

v.

**Jesse BENSON, Appellant.**

Supreme Court of Pennsylvania.

Argued April 10, 1978.

Decided Oct. 5, 1978.

2

John W. Packel, Chief, Appeals Div., Albert J. Smite, Jr., Philadelphia, for appellant.

Edward G. Rendell, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty., for Law, Robert B. Lawler, Chief, Appeals Div., Marianne E. Cox, Asst. Dist. Atty., Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and LARSEN, JJ.

## OPINION OF THE COURT

PER CURIAM.

In this appeal, appellant challenges the legitimacy of the investigatory stop and the subsequent arrest. We find the contentions meritless.

Judgments of sentence affirmed.

MANDERINO, J., did not participate in the decision or consideration of this case.

ROBERTS, J., filed a dissenting opinion in which EAGEN, C. J., joined.

ROBERTS, Justice, dissenting.

The majority concludes that, upon a motion to suppress, the Commonwealth need not offer any basis for issuance of a radio report relied upon exclusively by the police officer stopping appellant Jesse Benson. I dissent. Like any other police conduct, the decision to issue a radio report upon which investigating officers rely is not immune from scrutiny under the Constitution.

A Philadelphia police officer stopped appellant while appellant was driving an automobile. The officer, before making the stop, did not observe appellant violating any traffic laws, the Crimes Code, or otherwise engaging in suspicious behavior. Rather, the sole justification for the stop was the officer's linking appellant to a previously broadcasted police radio report. The officer had no personal

knowledge of the basis for the radio report, and no independent information corroborating it.

The radio report described a suspect wanted for investigation regarding the illegal sale of guns and a check-writing machine. Upon stopping appellant, the officer asked appellant for his driver's license and owner's card. After informing the officer that he had neither, appellant was taken into police custody. The officer searched the vehicle appellant was operating and discovered a check-writing machine. Appellant was then taken to police headquarters.

Later, police learned that appellant had been operating a stolen vehicle. Police charged him with offenses relating to the car theft, but did not press charges with respect to the guns or the seized check machine.

In his motion to suppress, appellant challenged the legality of his arrest based on the stop, and the admissibility of evidence obtained as a result. At the suppression hearing, the officer making the stop testified, and offered the radio report as the sole basis for the stop. The Commonwealth offered no other evidence concerning the radio report leading to appellant's arrest.

In *Commonwealth v. Swanger,* 453 Pa. 107, 307 A.2d 875 (1973), we invalidated "routine" police stops of vehicles where no "outward sign of a violation of the Motor Vehicle Code" existed. This Court emphasized:

> "An automobile is a place where an individual has a reasonable expectation of privacy. Cf. *Henry v. United States,* 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Commonwealth v. Linde,* 448 Pa. 230, 293 A.2d 62 (1972); *Commonwealth v. Shaffer,* 447 Pa. 91, 288 A.2d 727 (1972). Moreover, when a police officer stops a vehicle he has 'seized' the vehicle and its occupants, and thus, the protections of the Fourth Amendment must be considered. Cf. *Terry v. Ohio,* supra. *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *Commonwealth v. Pollard,* 450 Pa. 138, 299 A.2d 233 (1973)."

4

Id., 453 Pa. at 111, 307 A.2d at 877 (footnote omitted). In preserving this justifiable expectation of privacy, the Court concluded:

> "[B]efore the government may single out one automobile to stop, there must be specific facts justifying this intrusion. To hold otherwise would be to give the police absolute, unreviewable discretion and authority to intrude into an individual's life for no cause whatsoever."

Id., 453 Pa. at 112, 307 A.2d at 878.

*Whitely v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), disposes of the question whether "specific facts justifying this intrusion" existed. In *Whitely*, the Court found a sheriff's conclusory complaint implicating petitioner insufficient to support a detached magistrate's "independent judgment that probable cause exists," 401 U.S. at 564, 91 S.Ct. at 1035, and thus concluded that petitioner's arrest was unlawful. The sheriff had issued a bulletin on police radio identifying petitioner as a suspect. Police officers who arrested petitioner relied upon the radio report. In rejecting the state's argument that the arresting officer's reliance upon the radio report made the arrest lawful, Mr. Justice Harlan, speaking for the Court, concluded:

> "We do not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest."

Id., 401 U.S. at 568, 91 S.Ct. at 1037. So too here, the detective's decision to issue the radio bulletin describing a person suspected of criminal activity cannot preclude the inquiry, required under *Swanger*, into whether "specific facts justif[ied] this intrusion." Thus, the contrary conclu-

sion of the majority authorizes the same absolute, unreviewable police discretion this Court condemned in *Swanger.*

In *Commonwealth v. Boyer,* 236 Pa.Super. 214, 345 A.2d 187 (1975), a police officer's sole basis for stopping a vehicle was information the officer received over the State Police teletype. The Commonwealth failed to demonstrate the reliability of this information, and therefore the Superior Court properly held the arrest invalid. The Maryland Court of Special Appeals, in similar circumstances, concluded:

> "The State offered no testimony from the police officer or other police employee who may have broadcast the radio alert, nor did it advance any background information pertaining to the broadcast heard by Officer Bogue.
>
> We believe the State failed to meet its burden of specifying the particular and articulable facts upon which the police were justified in intruding upon the appellant's right to personal security. The holdings of *Terry* and its companion case, *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), make it clear that a 'police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a citizen . . . he must have constitutionally adequate, reasonable grounds for doing so.' (Emphasis added.) 392 U.S. at 64, 88 S.Ct. at 1903. We cannot accept the argument of the State that the mere broadcast of information over a police radio, in and of itself, constitutes 'constitutionally adequate' grounds to justify the intrusion. We hold that the State should have produced some testimony at the suppression hearing to indicate the factual basis upon which the radio alert was issued and thus have enabled the court to evaluate the reasonableness of the 'stop and frisk' and the ensuing arrest, search and seizure."

*Price v. State,* 37 Md.App. 248, 253, 376 A.2d 1158, 1162 (1977). Thus, unlike *United States v. Hernandez,* 486 F.2d 614 (7th Cir.), cert. denied, 415 U.S. 959, 94 S.Ct. 1488, 39 L.Ed.2d 574 (1973), upon which the Commonwealth relies, *Boyer* and *Price* properly apply the established law of search and seizure.

6

In sum, it must be concluded that Judge Hoffman, joined by Judge Spaeth, correctly perceived the issue in this case and the consequences of today's decision:

"[O]fficers without reasonable suspicion to stop a suspect can issue a radio call and have other officers stop the suspect. The stopping officers would then be able to obtain sufficient information to justify the stop. This has never been the law."

*Commonwealth v. Benson,* 239 Pa.Super. 100, 111, 361 A.2d 695, 700 (1976) (Hoffman, J., joined by Spaeth, J., dissenting). Because the Commonwealth has failed to fulfill its "burden of going forward with the evidence and of establishing the admissibility of the challenged evidence," Pa.R. Crim.Proc. 323(h), I would invalidate the arrest pursuant to the illegal stop, suppress evidence obtained as a result of the illegal arrest, reverse judgment of sentence, and grant appellant a new trial.

EAGEN, C. J., joins in this dissenting opinion.